**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF NEW YORK**

---

JOSEPH MORALES,

Plaintiff,

-against-

CAROLYN COLVIN, *ACTING COMMISSIONER OF SOCIAL SECURITY,*

Defendant.

16-cv-08373 (ALC)

OPINION AND ORDER

---

**ANDREW L. CARTER, JR., United States District Judge:**

This is an action challenging the Commissioner of Social Security's ("Commissioner")

final decision that Plaintiff Joseph Morales ("Plaintiff") is not entitled to disability insurance

benefits ("DIB") under Title II of the Social Security Act. Currently pending are Plaintiff's and

Defendant's cross motions for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c).[1] The

Court has considered the parties' submissions and for the reasons set forth below, the Court

grants the Commissioner's motion and denies Plaintiff's motion.

## BACKGROUND

### I.     Procedural Background

Plaintiff filed for disability insurance benefits ("DIB") under Title II of the Social Security

Act on June 6, 2014, asserting a disability commencing on January 31, 2014 due to a car accident

---

[1] Plaintiff's motion indicates that he is moving for summary judgment. ECF No. 8. However, his memorandum of law in support of his motion is styled as a motion for judgment on the pleadings. ECF No. 9. Because Plaintiff's memorandum of law is for a judgment on the pleadings, and the standard and relief are the same, this Court will consider both motions as seeking judgement on the pleadings. *See* Fed. R. Civ. P. 12(c); Fed. R. Civ. P. 56. *See also Graham v. Heckler*, 580 F. Supp. 1238, 1239 n.2 (S.D.N.Y. 1984) ("We treat plaintiff's motion for summary judgment as a motion for judgment on the pleadings, which is technically the proper vehicle under the Social Security Act for a decision on the merits of the complaint.").

and subsequent lower back surgery. R. at 192.[2] The application was denied initially on November 12, 2014, and again upon reconsideration on May 18, 2015. R. at 125. Thereafter Plaintiff filed a written request for a hearing on July 6, 2015. *Id.* The hearing commenced on March 8, 2016. R. at 162. Administrative Law Judge ("ALJ") Karen Shelton rendered her decision on July 26, 2016, finding that Plaintiff was not disabled under sections 216(i) and 223(d) of the Social Security Act. R. at 23. Plaintiff then requested and was denied reconsideration by the Social Security Administration ("SSA") Appeals Council on September 21, 2016. *See* ECF No. 9 at 5 ("Pl. Br.").

Plaintiff brought this action on October 27, 2016. ECF No. 1 ("Pl. Compl."). On March 14, 2017, Plaintiff moved for a judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c). Pl. Br. at 1. Commissioner filed a cross-motion for judgment on the pleadings on May 17, 2017. ECF No. 11 ("Comm'r Br."). Accordingly, this Court considers the motion fully briefed.

## II.      Factual Background

Plaintiff, a forty-two-year-old man, was previously employed as a truck driver, construction worker, and onsite shop steward for WDF Inc. R. at 44-45, 48-49. During the six-year period Plaintiff worked for WDF his tasks included loading, unloading, handling, and delivering 100-150 pounds of material from a variety of trucks. R. at 45-46. Plaintiff also shipped and received deliveries, and handled administrative paperwork. R. at 47. On January 16, 2011 Plaintiff was involved in a work accident, where he was rear ended while driving his delivery truck. R. at 37. Following the accident, Plaintiff underwent back surgery on February 2, 2014. R. at 38.

---

[2] "R." refers to the Certified Administrative Record filed at ECF No. 7. Pagination follows original pagination in the Certified Administrative Record.

Accordingly, Plaintiff's alleged onset date of disability is January 31, 2014, the day he left work to prepare for surgery. *Id.*

## III. Medical History

Numerous doctors have examined Plaintiff. This opinion summarizes those medical opinions relevant to the issue presented here.[3]

### A. Treating Source Medical Evidence

#### i. Physical Observations

Prior to January 31, 2014, Plaintiff had a history of degenerative disc disease involving a previous lower back surgery in 2006. R. at 577-78. Dr. Neuwirth performed Plaintiff's prior surgery. On February 4, 2014, Dr. Neuwirth performed an L-4-L5 fusion and disc excision at Mount Sinai Hospital. R. at 367-551. Despite surgery, Plaintiff complained of pain in his right and lower back, which was radiating to his right groin. R. at 640. Upon follow up in February and March 2014, Plaintiff reported continued pain in his lower back, thigh, and groin area. R. at 559-60. By May, Dr. Neuwirth noted that Plaintiff was walking better, felt better overall, and his radicular pain was largely resolved. R. at 558.

Then in June, Plaintiff started physical therapy at Range of Motion Spine and Sports Therapy with Thomas Berg. R. at 665-72. In August, Plaintiff continued to complain of pain, but Dr. Neuwirth indicated that he was not sure what was causing his continued pain. R. at 739. By November 2014, Plaintiff was progressing slowly with physical therapy, but was able to return to manageable levels with respect to activities of daily living. R. at 678.

---

[3] Medical opinions regarding brief consultations with Plaintiff that are not discussed in this opinion are: Dr. Varsha Mehta, R. at 552-553; Dr. Hany Gandy, R. at 617-639; Dr. Sidney Goldfarb, R. at 617-639; Dr. Jodi Alderson, R. at 654-655; and Dr. Andrew Merola, R. at 815-817, 824-827.

At a January 2015 follow up with Dr. Neuwirth, Plaintiff continued to complain of pain. R. at 741. Dr. Neuwirth noted that although Plaintiff's gait was halting, he was able to walk and heel toe walk for a brief period of time. *Id.* At this time, Plaintiff's spine appeared to be solidly fused. *Id.* Accordingly, Dr. Neuwirth indicated that he was not sure what was causing Plaintiff continued pain. *Id.* In fact, during a March 30, 2015 follow up with Dr. Bulkin for evaluation of neck and back pain, Dr. Bulkin observed that Plaintiff gave questionable effort. R. at 742. Additionally, he noted that Plaintiff's ongoing complaints were possibly motivated by secondary gain. *Id.*

Dr. Potashnick saw Plaintiff on April 14, 2015 at the Physical Rehabilitation Center for evaluation of his neck and back pain. R. at 743-46. Plaintiff presented with a straight cane. He was able to walk at a reasonable pace, squat, and walk on heels and tiptoes while holding onto his cane. R. at 750-751. According to Dr. Potashnick, Plaintiff exhibited exaggerated pain behavior. R. at 744.

By June, Plaintiff started seeing Dr. Elbaz and Dr. Reyman for pain management treatment. R. at 756-64. He continued to complain of neck and back pain although his prescription Oxycodone was providing mild relief. R. at 758-62. Dr. Elbaz indicated that Plaintiff had some diffuse tenderness in the lower back as well as spinous process at L2-S1 with limited range of motion. R. at 758. Despite this, Plaintiff had only minimal sensory deficits. *Id.* Additionally, the doctor observed no signs of serious depression. R. at 757.

## ii. Psychiatric Observations

Plaintiff first reported complaints of depression after his surgery in February 2014. R. at 552-53. Jay Gordon, Ph.D., evaluated Plaintiff at Neuropsychology and Counseling Associates on February 16, 2014. R. at 556-57. Dr. Gordon diagnosed Plaintiff with a single episode of severe depression, generalized anxiety, and somatic symptoms disorder or persistent pain. R. at 557.

On October 14, 2014, Victoria Miller, Ph.D. conducted a psychiatric examination of Plaintiff at Point Pleasant Associates for complaints of depression and anxiety. R. at 656-58. Dr. Miller assessed adjustment disorder with mixed anxiety and depressed mood. R. at 658.

Plaintiff began seeing psychiatrist Dr. Da Silva, Ph.D bi-monthly beginning in January 2015. R. at 702-711; 765-79. On January 5, 2015, Dr. Da Silva conducted a mental status evaluation of Plaintiff. R at 705-711. Dr. Da Silva diagnosed trauma-induced depression, and anxiety due to a medical condition. R. at 710. From March 2015 to September 2015, Dr. Da Silva's medical records continuously diagnosed Plaintiff with social withdrawal, depressed mood, and excessive anxiety. R. at 765-790. By February 2016, Dr. Da Silva opined that Plaintiff had moderate limitations of his abilities to understand, remember, carry out instructions, and interact appropriately with supervisors and co-workers. R at 828-29. She further opined that Plaintiff had marked limitations of his abilities to interact appropriately with the public, and to respond appropriately to usual work situations and to changes in a routine work setting. *Id*. However, Dr. Da Silva indicated that Plaintiff made significant progress since starting psychotherapy in January 2015. R. at 831-32.

On March 2, 2016, Dr. Da Silva prepared a letter, opining that Plaintiff had a total permanent disability. R. at 831-32.

## B. Workers Compensation Independent Examiners

On March 19, 2015 Dr. William Head, a board-certified neurologist and psychiatrist, assessed Plaintiff for a worker's compensation independent psychiatric evaluation. R. at 721-29. Dr. Head diagnosed depression and recommended that Plaintiff continue with psychotherapy and anti-depressant medication. R. at 727. Dr. Head found no impairment of Plaintiff's ability to work. R at 728.

In April, Plaintiff underwent a neurological examination with Dr. Hausknecht for workers compensation purposes. R at 793-97. Upon examination, Dr. Hausknecht noted that Plaintiff had antalgic weakness in his left shoulder abductor and weakness of the right ankle dorsiflexion. *Id.* However, the remainder of Plaintiff's motor strength was intact in the lower and upper extremities. R. at 794.

On March 7, 2016, psychiatrist Dr. Joel King saw Plaintiff for a psychiatric evaluation for workers compensation. R. at 833-36. Dr. King diagnosed major depressive disorder as a direct consequence of Plaintiff's work place accident and opined that he was totally disabled. R. at 835.

## C. Consulting Medical Experts

In connection with Plaintiff's DIB application he was examined by Dr. Aldea in September 2014. Dr. Aldea opined that Plaintiff had mildly antalgic gait and good to fair balance. R. at 649. However, he determined that Plaintiff needed to use a cane for long distances. R. at 650. Dr. Aldea observed that Plaintiff was able to transfer independently on and off the examining table, but noted that he declined walking on his heels or toes because of pain. *Id.* Dr. Aldea found that Plaintiff had restricted range of the cervical and lumbar spines, but a full range of motion of all extremities with full strength in both hands. R. at 650-51.

State agency psychiatrist Dr. Seymour Bortner reviewed Plaintiff's medical record on November 12, 2014, and opined that Plaintiff did not have a significant limitation of his abilities to carry out very short and simple instructions, perform activities on a schedule, maintain regular attendance, be punctual, work in coordination with others, complete a normal work day and week, or to perform at a consistent pace. R at 104-08. However, Dr. Bortner found that Plaintiff's affective disorder renders him mildly limited in maintaining concentration, persistence, and pace. R. at 103.

On January 29, 2015, Dr. Flaherty, a second state agency psychiatrist, reviewed the Plaintiff's medical record and affirmed Dr. Bortner's opinion. R. at 121.

In the May 2015 reconsideration determination, Dr. Joseph Udomsaph affirmed Dr. Bortner's opinion, except he indicated that Plaintiff could crawl occasionally as opposed to frequently. R. at 122-23, 125.

**IV.    The ALJ's decision**

After considering the record, the ALJ evaluated Plaintiff's claims for DIB pursuant to the five-step sequential evaluation for assessing SSA claims. *See* discussion *infra* Commissioner's five-step analysis of disability claims. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since January 31, 2014. R. at 13. At the second step, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease with radiculopathy and affective disorder. *Id.* At the third step, the ALJ found that Plaintiff did not have an impairment combination that meets or medically equals the severity of Medical Listings 1.04 or 12.04 as listed in Appendix 1. R. at 14. Additionally, the ALJ noted that no medical expert in the record concluded that Plaintiff's impairments meet or medically equal a listed impairment. *Id.* At the forth step, the ALJ found that Plaintiff was unable to perform any past

relevant work as a construction worker, truck driver, or materials handler. R. at 22. At the fifth step, the ALJ found that Plaintiff had the residual functioning capacity ("RFC") to perform sedentary work as defined in 20 CFR 404.1567(a). R. at 16.

At this final step, the ALJ used a two-step process to determine whether there were any underlying medically determinable physical or mental impairment that could reasonably be expected to produce Plaintiff's pain or other symptoms, and whether the intensity, persistence, and limiting effect of Plaintiff's symptoms limit his ability to function. R. at 17. The ALJ concluded that, while Plaintiff's impairments "could reasonably be expected to cause some symptoms," his "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence." R. at 17. With that in mind, the ALJ determined that the Vocational Expert consider the following accommodations: Plaintiff must have the option to sit for five minutes after every thirty minutes of standing, stand for five minutes after thirty minutes of sitting; frequently push and pull with his upper and lower extremities; occasionally climb ramps and stairs, but never ladders, ropes, or scaffolds; and occasionally balance and stoop, but never kneel, crouch, or crawl. R. at 16. Ultimately the ALJ determined that given Plaintiff's age, education, work experience, and RFC, there were a significant number of jobs in the national economy that he could perform. R. at 22.

## APPLICABLE LEGAL STANDARDS

### I. Judicial Review of the Commissioner's Determination

In reviewing the Commissioner's final decision under 42 U.S.C. §§ 405(g) and 1383(c)(3), a district court reviews the administrative transcript to determine whether there is substantial evidence supporting the Commissioner's decision and whether the Commissioner applied the correct legal standard. *See Talavera v. Astue*, 697 F.3d 145, 151 (2d Cir. 2012). Substantial

evidence" is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)) (internal quotation marks omitted).

The substantial evidence standard means once an ALJ finds facts, a district court can reject those facts "only if a reasonable factfinder would have to conclude otherwise." *Brault v. SSA*, 683 F.3d 443 (2d Cir. 2012) (quoting *Warren v. Shalala*, 29 F.3d 1287, 1290 (8th Cir. 1994)). In other words, this Court must afford the Commissioner's determination considerable deference, and may not "substitute its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Jones v. Sullivan*, 949 F.2d 57, 59 (2d Cir. 1991) (internal quotation marks and citation omitted).

## II.  Commissioner's Determination of Disability

### A.  Definition of Disability

A disability, as defined by the Social Security Act, is one that renders a person unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) *accord* 42 U.S.C. § 1382c(a)(3)(A). Further, "The impairment must be 'of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.'" *Shaw v. Chater*, 221 F.3d 126, 131-32 (2d Cir. 2000) (quoting 42 U.S.C. § 423(d)(2)(A)).

## B. The Commissioner's five-step analysis of disability claims

The Commissioner must use a five-step process for determining whether a claimant has a disability. *Curry v. Apfel*, 209 F.3d 117, 122 (2d Cir. 2000). "The claimant has the general burden of proving that he or she has a disability within the meaning of the Act." *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008). The claimant "bears the burden of proving his or her case at steps one through four." *Id.* (internal quotation marks and citation omitted). At step five, if the claimant cannot perform his past work, "the burden shifts to the Commissioner to show that there [are] a significant number of jobs in the national economy that [the plaintiff] could perform based on his residual functional capacity, age, education, and prior vocational experience." *Butts v. Barnhart*, 388 F.3d 377, 381 (2d Cir. 2004), *as amended on reh'g in part*, 416 F.3d 101 (2d Cir. 2005); *see* 20 C.F.R. § 404.1560.

First, the Commissioner determines whether the claimant is employed. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If he is not, the Commissioner next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to work. 20 C.F.R. § 404.1520(a)(4)(ii). If the claimant suffers from such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the SSA regulations. 20 C.F.R. § 404.1520(a)(4)(iii); *see also* 20 C.F.R., Part 404, Subpart P, App'x 1. If the claimant has a listed impairment, the Commissioner will consider him disabled. *Id.* If the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity ("RFC") to perform his past work. 20 C.F.R. § 404.1520(a)(4)(iv). Finally, if the claimant is unable to perform his past work, the Commissioner determines whether there is other work which the claimant could perform. 20 C.F.R. § 404.1520(a)(4)(v).

# DISCUSSION

Plaintiff moves for vacatur of the Commissioner's decision on grounds that the ALJ erred by: (1) misapplying the Treating Physician Rule by failing to assign controlling weight to Plaintiff's treating physician, and instead relying on biased workers compensation independent medical examiners ("workers comp examiners"); (2) failing to apply sections 1.04 and 12.04 of the Medical Listings to find Plaintiff disabled; (3) relying on the Vocational Expert's testimony; and (4) not sufficiently stating the specific reasons for her credibility assessment of Plaintiff.

## I.    Treating Physician Rule

As an initial matter, the Second Circuit has held that an "ALJ cannot reject a treating physician's diagnosis without first attempting to fill any clear gaps in the administrative record." *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999). At the administrative hearing the ALJ ensured that Plaintiff and his counsel had a full and fair opportunity to enter all the applicable medical evidence. R. at 32-35. Thus, this Court holds that ALJ sufficiently developed the record.

The Second Circuit has defined a "treating physician" as "the claimant's 'own physician, osteopath or psychologist . . . who has provided the individual with medical treatment or evaluation, and who has or who had an ongoing treatment and physician-patient relationship with the individual." *Sokol v. Astrue*, No. 04-CV-6631(KMK)(LMS), 2008 WL 4899545, at *12 (S.D.N.Y. Nov. 12, 2008) (quoting *Schisler v. Bowen*, 851 F.2d 43, 46 (2d Cir.1988)). Under the "treating physician rule," "the opinion of a claimant's treating physician as to the nature and severity of the impairment is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record.'" *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (quoting 20 C.F.R. § 404.1527(d)(2)); *accord Green-Younger v. Barnhart*, 335 F.3d

99, 106 (2d Cir. 2003); *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000). Generally, "the

opinion of the treating physician is not afforded controlling weight where . . . the treating

physician issued opinions that are not consistent with . . . the opinions of other medical experts."

*Burgess*, 537 F.3d at 128 (quoting *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004)). The

regulations specify that when controlling weight is not given to a treating physician's opinion, the

Court should consider the following factors in determining the weight to be given such an

opinion:

> the length of the treatment relationship and the frequency of examination; (2) the nature
> and extent of the treatment relationship; (3) the evidence that supports the treating
> physician's report; (4) how consistent the treating physician's opinion is with the record as
> a whole; (5) the specialization of the physician in contrast to the condition being treated;
> and (6) any other factors which may be significant.

*Abreu v. Astrue*, No. 11-3719 (ALC), 2012 WL 4714892, at *4 (S.D.N.Y. Sept. 27, 2012).

Here, Plaintiff's brief does not specifically allege which medical testimony the ALJ

disregarded; rather Plaintiff broadly argues that the ALJ should have given controlling weight to

"the credible opinions of Mr. Morales' treating doctors." Pl. Br. at 7.

### A. Dr. Neuwirth's Opinion

The ALJ correctly applied the treating physician rule to Dr. Neuwirth's opinion by

according some, although not controlling, weight to his opinion. Dr. Neuwirth, whom Plaintiff

has seen since 2006, opined that Plaintiff is limited to sedentary work[4] with an exception for the

duration in which he stands, walks, and sits. R. at 752-755. Dr. Neuwirth also noted several

postural and environmental limitations. *Id.* The ALJ gave little weight to the postural and

environmental limitations discussed in Dr. Neuwirth's opinion because she found that they "are

---

[4] "Sedentary work" is generally defined as work in a sitting position for six hours of an eight-hour workday. *See*
SSR 96-9p, 61 Fed. Reg. 34478, 34480.

not consistent with the evidence of record, as there are no subjective complaints related to most of [the] restrictions." R. at 19. Namely, neither Dr. Potashnick, Dr. Elbaz, nor Dr. Reyman noted any environmental conditions that would exacerbate Plaintiff's pain, nor did Plaintiff testify that he could not be exposed to particular environments. Given the inconsistencies between Dr. Neuwirth's testimony and that of several other medical experts, declining to give controlling weight to this testimony was proper.[5] See *Halloran*, 362 F.3d at 32.

### B. Dr. Da Silva's Opinion

The ALJ also correctly applied the treating physician rule to Dr. Da Silva's opinion. The ALJ's decision to not give controlling weight to Dr. Da Silva's opinion that Plaintiff has significant depressive symptoms and severe social anxiety was supported by substantial evidence. *See* R. at 831-32. Moreover, the ALJ found that Dr. Da Silva's opinion "is not consistent with the evidence of record, including claimants own testimony that he has no difficulty getting along with others." R. at 20. Dr. Da Silva's opinion is also inconsistent with Dr. Neuwirth's opinion, who identified no serious sign of depression, and Dr. Bortner's opinion, who found that Plaintiff could understand and execute simple instructions, work in coordination with others, interact with others, and adapt to workplace change. R. at 104-08. Accordingly, the ALJ properly accorded limited evidentiary weight to Dr. Da Silva's opinion.

### C. Worker's Compensation Independent Medical Examiner

Furthermore, the ALJ properly rejected Plaintiff's conclusory allegation of bias by the workers comp examiner. This claim is unsupported by any case law. *See Valdez v. Colvin*, 232

---

[5] Aside from the postural and environmental restrictions, the ALJ assigned controlling weight to Dr. Neuwirth's opinion in her RFC determination and in the hypothetical issued to the vocational expert. *See* R. at 16, 91-93.

F. Supp. 3d 543, 558 n.8 (S.D.N.Y. 2017) (rejecting argument that Workers' Compensation independent medical examiner was biased as "unsupported by any caselaw"). To the contrary, the Second Circuit has stated that a medical examiner's affiliation with a state insurance fund is insufficient to show bias. Under such reasoning, "virtually every [medical] opinion provided would be suspect to the extent it was requested by an interested party (including plaintiff), because it is always arguably in the 'self-interest' of the doctor to help the party who requested that he give an opinion." *Diaz v Shalala*, 59 F.3d 307, 314 n.9 (2d Cir. 1995).

Plaintiff has also not provided any grounds, aside from their employment, from which to conclude that the workers comp examiners' opinions were biased. Plaintiff identifies no medical findings by these individuals that misrepresented tests they may have performed, or that the tests they performed were selectively chosen and applied for purposes of eliciting a one-sided result.

Here, the ALJ specifically tempered the weight she accorded to the various workers compensation claim opinions offered regarding Plaintiff's mental and physical health, noting "they were rendered for workers compensation litigation and not subject to the rules and regulations set forth by the Agency." R. at 20. This Court will thus not credit Plaintiff's conclusory allegations of bias. Accordingly this Court holds that the ALJ properly applied the treating physician rule.

## II.     Application of Medical Listings 1.04 and 12.04

Plaintiff asserts that the ALJ erred in failing to apply sections 1.04 and 12.04 of the Medical Listings to find him disabled, contending that his spinal impairment meets the criteria for section 1.04 and his psychological impairment meets the criteria for section 12.04. Pl. Br. at 8. For a claimant to show that his impairment matches a listing, it must meet all of the specified criteria in the Medical Listings. "An impairment that manifests only some of those criteria, no matter

how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). Moreover, unless the impairment is expected to result in death, it must have lasted or must be expected to last for a continuous period of at least twelve months. 20 C.F.R. § 404.1509.

## A. Medical Listing 1.04

Medical Listing 1.04 governs disorders of the spine. In order to meet the requirements of the listing, there must be evidence of a spinal disorder with evidence of nerve root compression or spinal cord compression and either (a) neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss; (b) spinal arachnoiditis, manifested by severe burning or painful dysesthesia, resulting in the need to change posture more than every two hours; or (c) lumbar spinal stenosis resulting in pseudoclaudication, manifested by chronic nonradicular pain and weakness, and resulting in the inability to ambulate effectively. 20 C.F.R. § Pt. 404, Subpt. P, App. 1; R. at 14.

The ALJ found that although Plaintiff suffers from degenerative disc disease, the medical evidence fails to reveal: (a) neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss accompanied by sensory or reflex loss; (b) spinal arachnoiditis; or (c) an inability to ambulate effectively. R. at 14. Specifically, the ALJ found that after undergoing surgery in February 2014, Plaintiff's radicular pain largely resolved. R. at 17-18, 558. Whereas Listing 1.04 A contemplates "significant motor loss," there was no report of muscle atrophy. R. at 647, 651. To the extent that there is evidence of some motor loss, both Dr. Potashnik and Dr. Bulkin observed that Plaintiff failed to give effort on strength testing. R. at 742, 744. Dr. Elbaz also indicated that Plaintiff had only minimal sensory deficits. R. at 758. Additionally,

Plaintiff's claim of "significant limitations in his ability to walk, stand, or sit for prolonged periods," Pl. Br. at 8, and his use of a cane do not satisfy the Listings. Moreover, the ALJ found that Plaintiff's own testimony that he drives short distances, take public transportation, and accompanies his wife to the grocery store, R. at 41-42, 75-76, in addition to medical testimony describing Plaintiff's ability to walk at an adequate pace, R. at 741-42, indicate that Plaintiff can ambulate effectively. R. at 18.

Here, although the ALJ might have been more specific in detailing the reasons for concluding that Plaintiff's condition did not satisfy a listed impairment, other portions of the ALJ's detailed decision, along with Plaintiff's own testimony, demonstrate that substantial evidence supports this part of the ALJ's determination. *See Salmini v. Comm'r of Soc. Sec.*, 371 F. App'x 109, 112-13 (2d Cir. 2010); 20 C.F.R., Pt. 404, Subpt. P, App. For the above reasons, this court holds that there is substantial evidence to support the ALJ's determination that Plaintiff's degenerative disc disease was not sufficiently severe to meet or medically equal the criteria of Listing 1.04.

## B. Medical Listing 12.04

Medical Listing 12.04 governs depressive, bipolar and related disorders. These disorders are characterized by an irritable, depressed, elevated, or expansive mood, or by a loss of interest or pleasure in all or almost all activities, causing a clinically significant decline in functioning. Examples of disorders that are evaluated in this category include bipolar disorders (I or II), cyclothymic disorder, major depressive disorder, persistent depressive disorder (dysthymia), and bipolar or depressive disorder due to another medical condition. 20 C.F.R. § Pt. 404, Subpt. P, App. 1.

To meet the requirements of the impairments listed in 12.04, the claimant must present reports from psychiatrists and psychologists, based upon clinical findings, which show that he presently has a "seriously impaired ability to relate to other people." *Berry v. Schweiker*, 675 F.2d 464, 468 (2d Cir. 1982). Listing 12.04 contains paragraphs A, B, and C criteria, where paragraph A provides "a set of medical findings," paragraph B provides "a set of impairment-related functional limitations," and paragraph C provides "additional functional criteria." 20 C.F.R. Pt. 404, Subpt. P, App'x 1. A claimant is considered disabled under this listing only if his impairment meets the paragraph A criteria and either the paragraph B criteria or the paragraph C criteria.[6] *Id.*

To satisfy paragraph B, Plaintiff's mental disorder must result in "extreme" limitation of one, or "marked" limitation of two, of the four areas of mental functioning. They are: understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself. *Id.*

Paragraph C is met when there is a medically documented history of a chronic affective disorder lasting at least two years which has "caused a more than minimal limitation in the ability to perform basic work activities," coupled with one of the following: (1) repeated episodes of decompensation, each of extended duration; (2) a "residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate"; or (3) one or more years of an "inability to function outside a highly supportive living arrangement." 20 C.F.R. Part 404, Subpt. P, App. 1 § 12.04(C).

---

[6] The ALJ did not indicate whether the paragraph A criteria are met, but did not need to, since she concluded that neither the paragraph B nor paragraph C criteria are satisfied. R. at 21.

The ALJ concluded that the evidence failed to establish the presence of the paragraph B and C criteria. Relying on Plaintiff's testimony and the medical record, the ALJ found that Plaintiff had mild restrictions in activities of daily living, mild difficulties in social functioning, and had experienced no episodes of decompensation of an extended duration. R. at 15. Plaintiff confirmed this finding. Despite complaints of pain, he testified to driving short distances, taking public transportation, and occasionally grocery shopping with his wife. R. at 15, 42, 72-76. Additionally, Plaintiff testified that he socializes with others, attends church every Sunday, and manages his personal finances. R. at 71-72. Further evidence indicates that Plaintiff lives independently without a highly supportive living arrangement and is able to function independently outside of his home. *Id.*

There was also conflicting medical testimony regarding Plaintiff's depression. Dr. Elbaz observed no signs of serious depression, R. at 757, while Dr. Da Silva continuously diagnosed Plaintiff with social withdrawal, depressed mood, and excessive anxiety. R. at 765-790. Taking the evidence together, the ALJ concluded that Plaintiff had only mild/moderate limitations on daily activities, did not depend on a highly structured setting, and adopted well to activities of daily life. R. at 20-21, 260. Accordingly, this Court holds that substantial evidence supports the ALJ's determination that Plaintiff failed to meet or medically equal the criteria of listing 12.04.

### III.    Vocational Expert Testimony

Plaintiff challenges the ALJ's reliance on the vocational expert's testimony that there are a sufficient number of sedentary jobs that can he can perform, such as working as an "assembler", "inspector", or "charge account clerk." Pl. Br. at 9. An ALJ may properly make this determination either by applying the Medical Vocational Guidelines or by adducing testimony of a vocational expert. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). Further, "[a]n ALJ may

rely on a vocational expert's testimony regarding a hypothetical as long as 'there is substantial record evidence to support the assumption[s] upon which the vocational expert based his opinion.'" *McIntyre v. Colvin*, 758 F.3d 146, 151 (2d Cir. 2014) (quoting *Dumas v. Schweiker*, 712 F.2d 1545, 1553–54 (2d Cir.1983)).

In the present case, Vocational Expert ("VE") Gary A. Young testified at the administrative hearing, without objection to his qualifications. R at 11; 83. He testified that Plaintiff could perform "sedentary work," generally defined as work in a sitting position for six hours of an eight-hour workday. *See* SSR 96–9p, 61 Fed. Reg. 34478, 34480. However, the category of sedentary jobs is large, and the general definition provides for claimants who have additional limitations. Accordingly, "[i]n more complex cases" a vocational expert may be consulted to determine whether there is other work in the national economy that an individual with the ability to do less than the full range of sedentary work may perform. *Id.* at 34483; *see also Rosa v. Callahan*, 168 F.3d 72, 78 (2d Cir.1999).

To determine the extent to which Plaintiff's non-extertional limitations eroded the unskilled sedentary occupational base, the ALJ asked the VE whether jobs exist for Plaintiff given the following limitations: the individual could lift no more than ten pounds, and could stand and walk no more than six to eight hours, but needs the opportunity to sit for five minutes after every half hour of standing or walking, and the opportunity to stand for five minutes for every half hour of sitting. R. at 91. The VE testified that with those limitations, Plaintiff could not perform any of his past work but could be an assembler, inspector, or charge account clerk, all of which are sedentary, SVP 2 jobs. R. at 92-93. Furthermore, the record indicates that Plaintiff's limitations largely stemmed from his ability to walk, stand, and sit for extended periods of time.

The ALJ's modification to the sedentary base of work accounts for these limitations. Thus, this Court holds that the ALJ's reliance on the Vocational Expert testimony was proper.

## IV.    Plaintiff's Credibility

While "the subjective element of pain is an important factor to be considered in determining disability," *Mimms v. Heckler,* 750 F.2d 180, 185 (2d Cir.1984), "[t]he ALJ has discretion to evaluate the credibility of a claimant and to arrive at an independent judgment, in light of medical findings and other evidence, regarding the true extent of the pain alleged by the claimant." *Martins v. Chater*, 112 F.3d 504 (2d Cir. 1996) (quoting *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir.1979)). The ALJ's determination regarding the claimant's subjective complaints of pain will be upheld as long as the ALJ considered the testimony and gave reasons for disbelieving it that are supported by substantial evidence in the record. *Burris v. Chater*, No. 94 CIV. 8049 (SHS), 1996 WL 148345, at *5 (S.D.N.Y. Apr. 2, 1996), *see Aponte v. Secretary of Health and Human Services*, 728 F.2d 588, 591 (2d Cir.1984) ("If the Secretary's findings are supported by substantial evidence . . . the court must uphold the ALJ's decision to discount the claimant's subjective complaints of pain."). An individual's statements of pain alone cannot establish disability. Instead, there must be objective medical findings that show that the claimant has a medically determinable impairment. 42 U.S.C. § 423(d)(5)(A).

Here, the ALJ concluded that Plaintiff's RFC for sedentary work was not reduced by pain. He is able to handle his personal finances, drive short distances, take public transportation, and accompany his wife to the grocery store. R. at 20, 41-42, 60-63. Further, he is capable of using public transportation alone and walks at an adequate pace without a cane. R. at 41-42. Additionally, some medical opinions indicate that Plaintiff was exhibiting exaggerated pain

behavior. R. 742-44. The ALJ properly found that "the claimant's statements that he is unable to work are not supported and are not credible in light of discrepancies between the claimant's assertions, testimony, and medical record." R. at 21. Thus, this court holds that there is substantial evidence to support the ALJ's assessment of Plaintiff's credibility based on Plaintiff's own testimony and the medical evidence.

## CONCLUSION

The ALJ complied with the applicable legal standards and reached a decision that was supported by substantial evidence. For the above reasons, Defendant's motion for judgment on the pleadings is GRANTED and plaintiff's cross-motion is DENIED.

**SO ORDERED.**

Dated: March 15, 2018

New York, New York

**ANDREW L. CARTER, JR.**

**United States District Judge**